IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00141-KAS

D.R-M.[1],

     Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

     Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the **Social Security Administrative Record** [#7], filed March 14, 2025, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for social security disability insurance pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* Plaintiff filed an Opening Brief [#8], Defendant filed a Response [#10], and Plaintiff filed a Reply [#11]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the briefs, the case file, and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[2]

_____

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Signed Consent/Non-Consent Form* [#15]; *Order of Reference* [#16].

## I.    Background

On July 25, 2015, Plaintiff filed an application for disability and disability insurance benefits under Title II. Tr. 29.[3] Plaintiff alleged disability beginning December 1, 2014. *Id*. Her claim was denied on November 13, 2015, and again upon reconsideration on June 30, 2020. *Id*. Plaintiff filed an untimely request for a hearing before an administrative law judge (ALJ), who found good cause to allow the hearing out of time. Tr. 53. The hearing took place on May 6, 2024. Tr. 49. On May 31, 2024, the ALJ issued an unfavorable decision. Tr. 29-42.

## II.    Social Security Framework

Pursuant to the Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically

---

[3] The Court cites the Transcript of the Administrative Proceedings [#7] according to the Court Transcript Index's pagination. The Court cites briefs according to the numbering stamped at the top of each page by the Court's CM/ECF docketing system.

acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

## A.    The Five-Step Framework

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe

impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

In making his or her assessment, an ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010).

**B.    The ALJ's Determination**

The ALJ addressed each of the five steps in this case. At step one, the ALJ determined that Plaintiff met the Act's insured status requirements through June 30, 2020,

and that she did not engage in substantial gainful activity from December 1, 2014, the alleged onset date, through June 30, 2020, her date last insured. Tr. 31.

At step two, The ALJ found that, through her date last insured, Plaintiff suffered from the following severe impairments: (1) Still's disease; (2) seronegative rheumatoid arthritis (RA); (3) osteopenia causing bilateral stress fractures of the ankles; (4) fibromyalgia; and (5) adjustment disorder with depressed mood. Tr. 31.

At step three, the ALJ found that Plaintiff's impairments did not, either separately or in combination, meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 32-34. The ALJ concluded that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria of listing 12.04 (referring to § 12.00 of Appendix 1 to Subpart P of 20 C.F.R. § 404) because they did not result in extreme limitation of one, or a marked limitation of two, of the four areas of mental functioning. Tr. 33-34. Instead, the ALJ found that Plaintiff had moderate impairment in the area of understanding, remembering, or applying information and in the area of concentrating, persisting, or maintaining pace. Tr. 33. Plaintiff had, at most, mild impairment in the area of interacting with others and in the area of adapting or managing oneself. Tr. 33. The ALJ further concluded that Plaintiff's mental impairments did not satisfy the "paragraph C" criteria of listing 12.04 because the record did not establish that Plaintiff had only a minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life. Tr. 34.

At step four, the ALJ concluded that Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a).[4] The ALJ further found that Plaintiff

> can occasionally lift and or carry 10 pounds and frequently less than 10 pounds. She can sit for approximately six hours in an eight-hour day and stand or walk for approximately two hours in an eight hour day. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance as part of her job requirements. She can occasionally stoop, crouch, kneel, and crawl. She can have only occasional exposure to extremes of cold and heat. She can never work around unprotected heights or moving and or dangerous machinery. She can perform work that consists of only simple tasks.

Tr. 34. Based on the RFC and the testimony of an impartial vocational expert, the ALJ found that the demands of Plaintiff's past relevant work exceeded her RFC. Tr. 41. Thus, Plaintiff was unable to perform past relevant work through her date last insured. Tr. 41.

At step five, the ALJ found—considering Plaintiff's age, education, work experience, and RFC—that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Tr. 41-42. The vocational expert identified several examples of such work that the ALJ credited, including food and beverage order clerk, final assembler, and charge account clerk. Tr. 41. Thus, the ALJ found that Plaintiff was not disabled at step five.

On September 20, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 14-16. The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981 (explaining that the ALJ's decision becomes the final decision when the Appeals Council denies a request for review).

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.." 20 C.F.R. § 404.1567(a).

### III.     Standard of Review

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson*, 602 F.3d at 1140. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (internal quotation marks and modification omitted).

#### IV.    Analysis

Plaintiff argues that the ALJ erred in three respects. First, Plaintiff argues that the ALJ failed to adequately assess the medical opinions of Dr. Christopher Snell and licensed clinical social worker ("LCSW") Josh Parker and thereby failed to adequately account for Plaintiff's mental limitations in the RFC. *Opening Brief* [#8] at 12-20. Second, Plaintiff argues that the ALJ's decision was internally inconsistent with respect to Plaintiff's severe mental impairments. *Id.* at 20-24. Third, Plaintiff argues that the ALJ failed to consider the third-party function report completed by Plaintiff's husband. *Id.* at 24-26. The Court addresses each contention in turn.

**A.    Opinion Evidence**

Plaintiff first challenges the ALJ's RFC finding at step four on the grounds that the ALJ did not adequately assess the opinions of Dr. Snell and LCSW Parker. *Opening Brief* [#8] at 16-20.

For claims filed before March 27, 2017, an ALJ was required to weigh the opinions of acceptable medical sources and non-medical sources alike according to the following factors: (1) whether the source examined the plaintiff; (2) the nature of the treatment relationship, including the length, frequency, nature, and extent of the treatment relationship; (3) the degree to which the opinion is supported by relevant evidence; (4) the degree to which the opinion is consistent with the record as a whole; (5) whether the source is a specialist; and (6) other factors. 20 C.F.R. § 404.1527(c), (f); *see also Mounts v. Astrue*, 479 F. App'x 860, 865 (10th Cir. 2012). The ALJ should generally explain the weight given to opinions from nonmedical sources and non-acceptable medical sources. 20 C.F.R. § 404.1527(f)(2).

"The two most important factors are supportability and consistency with the entire record." *Roy o/b/o Helton v. Comm'r, SSA*, No. 22-5036, 2022 WL 17726702, at *3 (10th Cir. Dec. 16, 2022). Regarding supportability, the ALJ must consider whether the source's opinions are supported by "medical signs and laboratory findings." 20 C.F.R. § 404.1527(c)(3). "The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." *Id.* Regarding consistency, the ALJ must compare the source's opinion with the other record evidence. 20 C.F.R. § 404.1527(c)(4). "[T]he more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] should give to that medical opinion." *Id.*

### 1.    Dr. Snell

In September 2022, two years after the relevant period, Plaintiff retained an organization called Workwell Foundation to perform an electroencephalogram (EEG), which is a "non-invasive, objective test used to evaluate electrical activity in the brain." Tr. 829. The test results were interpreted by one Christopher R. Snell, Ph.D.[5] Tr. 830. Dr. Snell found that (1) Plaintiff performed "above target range" on a task concerning executive functioning; (2) Plaintiff demonstrated "an excess of inefficient Alpha activity in frontal areas associated with emotional control"; (3) Plaintiff demonstrated a "rightward shift in frontal asymmetry" suggesting "current anxiety" and potential "future anxiety"; and (4) that Plaintiff's "brain is not able to efficiently connect cortical areas to perform specific tasks and is associated with diminished cognitive efficiency." Tr. 830. Dr. Snell found that Plaintiff's self-reported "fatigue, insomnia and cognitive impairment including memory

---

[5] Plaintiff acknowledges that Dr. Snell is not Plaintiff's "treating physician," and nowhere contends that Dr. Snell is a physician or medical doctor. However, the ALJ found that Dr. Snell is an "acceptable medical source." Tr. 39.

problems, lack of mental clarity, poor concentration, inability to focus, and difficulty communicating," were "consistent with her EEG results[,] in particular inefficient communication between brain sites." Tr. 830. Elsewhere in his report, Dr. Snell opined that Plaintiff demonstrated "cardiopulmonary anomalies, low function and delayed recovery with severe symptom exacerbation post-exertion" that will "preclude[] employment of even a sedentary/stationary nature." Tr. 821.

The ALJ analyzed Dr. Snell's opinion. Tr. 39. After recounting Dr. Snell's findings, the ALJ concluded that they "appear to be consistent with the findings in this evaluation and are supported by the results in the evaluation." Tr. 39. However, the ALJ noted that Dr. Snell's opinion concerning Plaintiff's ability to work was "somewhat vague." Tr. 39. For example, the ALJ noted, Dr. Snell's opinion "indicate[s] the claimant is unable to perform even sedentary work, but do[es] not state to what degree precisely." Tr. 39. The ALJ then noted that other sources of evidence, including medical records from the relevant period and Plaintiff's own testimony, were "not entirely consistent" with Dr. Snell's conclusory opinion. Tr. 39. Plaintiff's mental health records during the relevant period showed that her condition was largely stable and did not suggest "incapacity for simple types of work." Tr. 40. Therefore, the ALJ afforded Dr. Snell's opinion "limited weight." Tr. 40.

Plaintiff now challenges the ALJ's assessment. *Opening Brief* [#8] at 19. Plaintiff argues "the ALJ did not make clear why he rejected Dr. Snell's opinions as 'somewhat vague.'" *Id.* However, the record squarely contradicts this argument. The ALJ explained exactly why he found Dr. Snell's opinion somewhat vague: Dr. Snell stated in a cursory manner that Plaintiff was precluded from even sedentary/stationary employment but did

not recount Plaintiff's work-related abilities with any degree of particularity. Thus, the ALJ aptly concluded, the opinion was "somewhat vague." Tr. 39. Read as a whole, the decision clearly explains why the ALJ found Dr. Snell's opinion unpersuasive.

Additionally, Plaintiff argues that if the ALJ had more appropriately assessed Dr. Snell's opinions regarding Plaintiff's mental limitations, the ALJ would not have found that Plaintiff had the RFC to perform jobs requiring frequent social interactions and language skills. *Opening Brief* [#8] at 20. Plaintiff argues that "[a] reasonable mind could conclude difficulty in word finding could have been work preclusive in this case." *Id.* Again, the record undermines Plaintiff's argument. Dr. Snell interpreted Plaintiff's EEG and found that Plaintiff had diminished cognitive efficiency, anxiety, and limited emotional control. Dr. Snell offered no opinion concerning Plaintiff's ability to speak with others or maintain basic social interactions, nor did Dr. Snell offer any opinion on how Plaintiff's EEG results related to her ability or inability to perform certain types of work. *See* Tr. 830. The ALJ could not have reversibly erred by failing to consider an opinion that Dr. Snell never explicitly offered.

Finally, to the extent that Plaintiff asserts that the ALJ's RFC did not account for Plaintiff's mental limitations, *see Opening Brief* [#8] at 19, the Court disagrees. The ALJ accounted for Plaintiff's mental limitations as follows:

> As a whole, the claimant does have some depressive symptoms and symptoms related to fatigue noted in her mental records. She has mood variability and some difficulty with concentrating. **This warrants limiting her to the simple work noted herein.** Yet, her treatment has been routine, somewhat sporadic, and her mental status findings have largely been stable. She has not required frequent urgent or emergent care for flares of symptoms. She has been able to engage in activities commensurate with simple work, such as driving, shopping, and texting. This, along with the other factors previously discussed lead one to conclude the claimant's mental conditions are less limiting overall than alleged.

Tr. 38. (emphasis added). Plaintiff neither acknowledges nor identifies any reversible error with respect to this finding. An ALJ may properly account for moderate limitations by limiting the type of work the claimant can perform. *Smith v. Colvin*, 821 F.3d 1264, 1268-69 (10th Cir. 2016); *C.K. v. Comm'r, SSA*, No. 23-cv-02922-CNS, 2025 WL 794388, at *4 (D. Colo. Mar. 13, 2025); *D.R. v. Comm'r, SSA*, No. 21-cv-00903-SKC, 2023 WL 7089904, at *5 (D. Colo. Oct. 26, 2023) ("These limitations of simple, unskilled work, properly account for Plaintiff's moderate limitations in her ability to understand, remember, and apply information."). The ALJ is not required to expressly address each moderate limitation in the RFC, provided that the connection between the limitation and the type of work is clear. *C.K.*, 2025 WL 794388, at *4. Here, substantial evidence supports the ALJ's RFC finding with respect to Plaintiff's mental impairments. Her mental health records from the relevant period suggested that her mental status was stable, and she testified that she was able to engage in basic activities of daily life, including preparing food, grooming, caring for her dog, texting, and driving her car to medical appointments and to run simple errands. *See* Tr. 58-59, 68-69, 96-97, 399-400, 426.

Defendant argues that the ALJ was tasked with assessing Plaintiff's impairments, symptoms, and limitations *on or before* June 30, 2020, and Dr. Snell assessed Plaintiff's condition in September 2022. Medical evidence from after the date last insured may be considered to the extent it sheds light on the nature and severity of a claimant's condition during the relevant time. *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004). The ALJ made no findings concerning the timing of Dr. Snell's opinion and the extent to which it shed light on Plaintiff's condition before June 2020. However, the Court concludes that, in addition to the reasons stated above, the fact that Dr. Snell assessed Plaintiff two years

after the relevant period lends further support to the conclusion that the ALJ committed no legal error in his weighing of Dr. Snell's opinion. *See* 20 C.F.R. § 404.131; *Henrie v. U.S. States Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).

### 2.    LCSW Parker

Plaintiff next challenges the ALJ's RFC finding on the ground that it was not informed by the opinion of LCSW Parker.

Plaintiff began counseling at Centus Counseling Center under the care of LCSW Parker in January 2022. Tr. 847. LCSW Parker's intake notes state that Plaintiff was diagnosed with adjustment disorder with depressed mood. Tr. 851. A review document dated January 2, 2024, stated that Plaintiff was "making progress toward reducing feelings of depression and anxiety through weekly therapy," that her mental status was "stable," and that her risk status was "low." Tr. 854. On March 21, 2024, LCSW Parker issued a letter to "provide evidence for treatment and services." Tr. 856. The letter noted that Plaintiff was diagnosed with adjustment disorder with depressed mood and myalgic encephalomyelitis (chronic fatigue). *Id*. As relevant here, the letter stated that Plaintiff suffered from "[s]ignificant impairment in social, occupational, and other important areas of functioning." *Id*. The letter further stated that Plaintiff's chronic fatigue "requires [her] to stay at home and rest most of the time."[6] Tr. 857.

The ALJ did not acknowledge LCSW Parker's letter or the other Centus Counseling Center records in his determination. Social Security Ruling 06-03p provides:

---

[6] Plaintiff asserts that LCSW Parker offered opinions about her ability to complete household chores, remember things, concentrate, stay on task, and accomplish the basic tasks of living. *See Opening Brief* [#8] at 17-18. The contention is blatantly contravened by the record. The citations that Plaintiff uses to support those assertions correspond to *Plaintiff's husband's* opinions, not LCSW Parker's opinions. *See* Tr. 253-58.

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*See Social Security Ruling 06–03p*, 2006 WL 2329939 (SSA Aug. 9, 2006). Therefore, to the extent that the ALJ's failure to discuss LCSW Parker's letter was erroneous, the Court finds that the error was harmless for at least three reasons.

First, LCSW Parker's letter established that Plaintiff suffers from adjustment disorder with depressed mood, which is cumulative of other mental health evidence that the ALJ considered and credited. Indeed, the ALJ noted Plaintiff's adjustment disorder diagnosis as a severe impairment at step two. Tr. 31.

Second, the rest of the letter concerns Plaintiff's struggle with myalgic encephalomyelitis (chronic fatigue).[7] *See* Tr. 856 (Noting "[t]he development of emotional or behavioral symptoms in response to an identifiable stressor(s)" and identifying the stressor as "diagnosis of myalgic encephalomyelitis/ME"); Tr. 857 ("This diagnosis directly stems from stress related to chronic illness (myalgic encephalomyelitis) that requires [Plaintiff] to remain at home and at rest most of the time. Due to this, persistent depressive symptoms are present."). Although the ALJ did not explicitly cite LCSW Parker's letter, he found that the claimant has "some depressive symptoms and *symptoms related to fatigue noted in her mental records*." Tr. 38 (emphasis added). Therefore, even if the ALJ did not identify the letter by name, the determination renders clear that the ALJ considered its contents.

---

[7] To the extent Plaintiff suggests that LCSW Parker offered opinions on any other pertinent mental limitation, a review of the letter simply does not support that theory. *See* Tr. 856-57.

LCSW Parker's letter was not the only source of evidence of Plaintiff's chronic fatigue. Plaintiff testified about it at length during the hearing. The ALJ found that Plaintiff's self-reported fatigue was not entirely consistent with her medical records during the relevant period. *See* Tr. 35 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"); Tr. 37-38 ("Thus, overall, the claimant has certainly had some degree of pain and fatigue, but she has had sufficient benefit with treatment such that she appears to be capable of working in the sedentary capacity described in the [RFC] and for all the reasons noted herein, the evidence does not fully support the intensity, persistence, and limiting effect of the conditions alleged, even considering the combination of her severe and non-severe impairments on her functioning."). Plaintiff does not appeal the ALJ's determination that myalgic encephalomyelitis (chronic fatigue) was not an impairment at step two and that it should not be taken into account in the RFC at step four. Any such argument is accordingly waived. *L.A.R. v. Kijakazi*, No. 21-cv-02728-NRN, 2022 WL 4364154, at *10 n.8 (D. Colo. Sept. 20, 2022).

Finally, LCSW Parker's letter was dated nearly *four years* after the relevant period and offers no analysis or discussion of Plaintiff's condition during the relevant period. An ALJ does not err by focusing on evidence from and near the relevant period, as Plaintiff must establish disability before the date last insured. *See* 20 C.F.R. § 404.131; *Henrie*, 13 F.3d at 360.

For these reasons, any error in failing to discuss LCSW Parker's letter was harmless.

15

**B.      Internal Inconsistency**

Plaintiff next contends that the ALJ's determination was flawed because it contained an internal inconsistency. *Opening Brief* [#8] at 22. Specifically, at step two, the ALJ found that Plaintiff's adjustment disorder with depressed mood was a severe impairment. At step four, however, Plaintiff claims that the ALJ "inexplicably" concluded that "it is reasonable to find [Plaintiff's] mental health conditions and symptoms non-severe." *Id.* (citing Tr. 40). According to Plaintiff, "[t]he ALJ did not provide any narrative explanation as to how the Plaintiff's mental health can be simultaneously severe (Tr. 31) and non-severe (Tr. 40)." *Id.*

The Court perceives no inconsistency, let alone an inconsistency amounting to reversible error. At step two, the ALJ identified Plaintiff's adjustment disorder with depressed mood as a severe impairment. Tr. 31. At step three, the ALJ found that the adjustment disorder did not meet or exceed the criteria of listing 12.04. Tr. 33. At step four, the ALJ accounted for Plaintiff's mental limitations by limiting her to simple work. Tr. 34, 38 ("As a whole, the claimant does have some depressive symptoms and symptoms related to fatigue noted in her mental records. She has mood variability and some difficulty with concentrating. This warrants limiting her to the simple work noted herein."). In support of that finding, the ALJ went on to analyze four medical opinions in the record.

As relevant here, the ALJ summarized the opinion of state agency Psy.D., Ken Wilson, which was issued in November 2015. Tr. 40. According to Dr. Wilson, in 2015, Plaintiff had "no restrictions in activities of daily living, no restriction in maintaining social functioning, mild difficulty in maintaining concentration, persistence, and pace, and no episodes of decompensation." Tr. 40 (citing TR. 96, Ex. 1A at 5). The ALJ noted that

16

because the opinion was issued in 2015, it relied on "the old rules for evaluating mental disorders under the prior regulatory framework," and that such framework "resulted in a finding that the claimant's mental condition was not severe." Tr. 40. The ALJ continued that Dr. Wilson's finding was consistent with the evidence in the record, including that Plaintiff had limited mental healthcare during the relevant period, intact mental status findings, and reports of only minor variability in mood and affect. Tr. 40. Therefore, the ALJ found that Dr. Wilson's conclusion that Plaintiff's condition in 2015 was non-severe, as demanded by the relevant framework at the time, was "reasonable." Tr. 40. Nowhere did the ALJ state that he adopted Dr. Wilson's conclusion, entirely abandoning his own, or otherwise changed course mid-determination to conclude that Plaintiff's condition was not severe. Therefore, nothing about the inconsistency that Plaintiff attempts to manufacture makes the ALJ's determination "unreviewable." Just as the law requires, the ALJ weighed several opinions, afforded various weights to those opinions according to the factors set forth in 20 C.F.R. § 404.1527(c), (f), and ultimately reached a conclusion as to Plaintiff's mental RFC that is supported by substantial evidence.

Again, Plaintiff suggests that the ALJ entirely overlooked Plaintiff's mental impairments in formulating the RFC. *Opening Brief* [#8] at 23. Yet Plaintiff acknowledges that the ALJ's RFC limited her to simple work, and she offers no argument or authority showing that such a limitation was an erroneous way to account for her mental limitations. As the Court has already explained above, the weight of the authority in this District instructs that an ALJ properly accounts for mental limitations by limiting the type of work a plaintiff can perform. *See, e.g.*, *Smith*, 821 F.3d at 1268-69.

## C.   Third-Party Function Report

Finally, Plaintiff challenges the ALJ's failure to discuss the third-party function report authored by her husband. In the report, Plaintiff's husband stated that she "has to take frequent breaks" while performing household chores and that "occasionally, she will get drained mid-task and I will take over for her." Tr. 253. As for social activities, he stated that Plaintiff spends time with others "very infrequently," having text or phone conversations "few days a week." Tr. 255. Overall, he stated that Plaintiff "struggles daily to accomplish the basic tasks of living." Tr. 258.

Regarding the harm of the asserted error, Plaintiff "incorporates the harm argument from Issue I herein for Issue III, as the ALJ's adequate consideration of evidence would likely have resulted in a more restrictive RFC" concerning Plaintiff's "mental capabilities." *Opening Brief* [#8] at 27.

However, the report is cumulative of Plaintiff's testimony and function report concerning her limitations. *See* Tr. 57-59, 64-70, 243-50. The ALJ discussed Plaintiff's self-reports and found them not entirely consistent with the available medical evidence in the record. Tr. 35, 37-38, 40. Therefore, although the ALJ's decision does not expressly address this lay witness evidence, any error in failing to do so was harmless. *Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013) (finding any error harmless where the ALJ's decision did not expressly address a letter from the petitioner's husband, which contained cumulative information); *Brescia v. Astrue*, 287 F. App'x 626, 630-31 (10th Cir. 2008) (finding that, "[w]hile the ALJ did not explicitly discuss the statements of Ms. Brescia's sister and friend, we do not believe this omission is grounds for remand given the nature of their evidence, which was largely cumulative of Ms. Brescia's testimony and

written statements"); *see also Miranda R. A. v. Kijakazi*, No. 20-CV-453-NDF-SH, 2022 WL 1005303, at *4 (N.D. Okla. Apr. 4, 2022) ("[T]he absence of an ALJ discussion about a lay witness statement will amount to harmless error in cases where the same evidence discussed by the ALJ in discounting the claimant's allegations also discredits the lay witness statement.") (citing *Best-Willie*, 514 F. App'x at 736)).

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: June 7, 2026                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

19